## DARRIEN GOETZENDANNER *VS.* SUPERINTENDENT, MASSACHUSETTS CORRECTIONAL INSTITUTION, NORFOLK, & another.[1]

No. 06-P-1621.

Norfolk. November 20, 2007. - April 10, 2008.

Present: RAPOZA, C.J., DUFFLY, & TRAINOR, JJ.

*Practice, Criminal,* Sentence, Execution of sentence.

A Superior Court judge properly denied the petition for a writ of habeas corpus brought by a prisoner who, having committed additional offenses while at liberty on parole, had intervening sentences imposed in addition to his reformatory sentences, where the sentences were neither illegal nor illegally imposed by the trial judge, and the prisoner was not entitled to immediate release [536-539]; however, this court, treating the petition as a claim for declaratory relief, concluded that the Department of Correction had improperly required the prisoner first to complete the balance of his reformatory sentences before serving his intervening sentences, where, in the circumstances of the case, service of the parole violation warrant was not effective until the expiration of the intervening sentences [539-541].

CIVIL ACTION commenced in the Superior Court Department on June 5, 2003.

A motion to dismiss and a motion for judgment on the pleadings were heard by *Paul A. Chernoff*, J.

*Joseph F. Krowski* for the plaintiff.

*David Slade* for the defendants.

DUFFLY, J. Darrien Goetzendanner was at liberty on parole from concurrent, twenty-year reformatory sentences[2] when he committed additional offenses for which he was arrested and

---

[1]Deputy Superintendent, Massachusetts Correctional Institution, Norfolk.

[2]Reformatory sentences, repealed in 1994 by St. 1993, c. 432, §§ 17-19, were "claimed to be based on a policy of early parole eligibility and rehabilitation." *Commonwealth* v. *Hayes*, 372 Mass. 505, 510 (1977). See *Commonwealth* v. *Brown*, 47 Mass. App. Ct. 616, 620 (1999), *S.C.*, 431 Mass. 772 (2000).

held in lieu of bail; he was convicted of these new offenses and intervening sentences were imposed.[3] The question raised by this appeal is whether the Department of Correction (department) has improperly required that Goetzendanner first complete the balance of his reformatory sentences before he serves his intervening sentences.

Goetzendanner claims that applicable law dictates that he first complete his intervening sentences before serving the remainder of his reformatory sentences.[4] Arguing that the sentences were thus "illegal" or "improperly imposed," he filed a petition for writ of habeas corpus seeking immediate release. Following a nonevidentiary hearing, Goetzendanner's petition and motion for judgment on the pleadings were denied; the department's motion to dismiss the petition was granted, and judgment entered accordingly. Goetzendanner appeals.

We agree with the department that Goetzendanner's sentences are not illegal, that they were not illegally imposed by the trial judge, and that Goetzendanner is not entitled to immediate release. That does not, however, end the inquiry. As the motion judge deciding the petition for writ of habeas corpus noted (albeit without deciding the controversy on this ground), Goetzendanner's reformatory sentences were "improperly executed" when the department calculated these sentences as having been served prior to the intervening sentences. We treat the denial of Goetzendanner's petition as a denial of his request for declara-

---

[3]Any sentence for a crime committed while the petitioner is on parole, that is imposed prior to service of the parole violation warrant, is an intervening sentence. See 120 Code Mass. Regs. § 303.16(2)(b)(1) (1997).

[4]The parties are in agreement that, in the circumstances of this case, the manner in which the sentences are executed makes a difference to Goetzendanner in that his parole eligibility date is four years sooner if we decide that he first serves his intervening sentence. This is because, by having executed the sentences such that Goetzendanner served the four years remaining on his reformatory sentences (and was not paroled from those sentences), his parole eligibility date in connection with the intervening sentences is calculated from the date he wrapped up the reformatory sentences; according to the department, he does not become eligible for parole until September 7, 2008. If parole eligibility is now calculated based on the intervening sentences having commenced on February 5, 1993, Goetzendanner's parole eligibility for the intervening sentences — as well as the reformatory sentences — will be calculated as having occurred four years earlier (according to the department, this "would have been in 2004").

tory judgment; resolve the controversy as to proper execution of the sentences; and remand for further action consistent with this opinion.

*Background.* Goetzendanner's reformatory sentences were imposed on February 18, 1983. On that date, he was convicted of armed assault with intent to rob or murder (and other offenses) and ordered to serve concurrent sentences, the longest of which was twenty years. Goetzendanner commenced serving the concurrent reformatory sentences and, as is relevant to this appeal, was released on parole from his reformatory sentences on June 11, 1991.[5] He was at liberty when he was charged with new crimes, including multiple counts of aggravated rape and kidnapping. Goetzendanner was arraigned and, unable to post bail, was held in connection with these new charges until his convictions. The parole board, on March 31, 1992, issued a parole violation warrant. Pending the outcome of the new criminal charges, the parole violation warrant was lodged against Goetzendanner as a detainer. On February 5, 1993, Goetzendanner was convicted of two counts of aggravated rape, kidnapping, and other offenses, for which he received concurrent sentences, including committed sentences of from twenty to thirty years in State prison.[6]

The department, taking the position that the "effective" date of return of the parole violation warrant was February 5, 1993 (the date Goetzendanner was convicted and received the intervening sentences), treated Goetzendanner as a returned parole violator with new sentences to be served after completion of the reformatory sentences.[7] On this basis, the department calculated

---

[5]Goetzendanner had also been paroled several times between 1985 and 1991, but parole was revoked following each of those releases.

[6]With respect to the first indictment for aggravated rape, the judge sentenced Goetzendanner to the Massachusetts Correctional Institution, Cedar Junction (MCI-Cedar Junction), "for not less than twenty years and not more than thirty years. You will receive credit for any time spent in confinement awaiting disposition of this case. This sentence is to be served from and after the expiration of all previous sentences which you have been ordered to serve."

As to the next three indictments on which Goetzendanner was convicted, the judge gave sentences of from twenty to thirty years, from eight to ten years, and from three to five years; each of these was ordered to "be served concurrently with each other" and concurrently with the sentence imposed on the first indictment.

[7]On the face of the printed parole violation warrant in the space below the

that Goetzendanner completed his reformatory sentences on February 1, 1997, and on that date formally discharged him. Also on that date, the department invoked the intervening sentences.

Goetzendanner claims that he "cannot be compelled to do his time on the intervening sentence from and after his parole sentence unless the parole violation warrant has been served prior to imposition of the intervening sentence," citing 120 Code Mass. Regs. § 303.16(2)(b)(2) (1997).

Responding, the department cites 120 Code Mass. Regs. § 303.16(2)(a), for the proposition that "[a]ny person [*sic*] authorized to serve civil or criminal process may serve a parole warrant,"[8] and argues that under this authority "the sentencing judge is certainly a person authorized to serve process and the imposition of a sentence in the terms used in [Goetzendanner's] case could be construed to provide constructive service of the process."[9]

For reasons we shall discuss, we conclude that Goetzendanner's claim is appropriately construed as one for declaratory judgment regarding the controversy between the parties: whether the department correctly carried out Goetzendanner's sentences.

*Discussion. 1. Denial of habeas corpus relief.* We begin our

---

preprinted words "Date Warrant Issued" is typed "3-31-92." In the space below the preprinted words "Effective Date of Return" is typed "3-31-92"; on the copy of this warrant in the record, a hand-drawn line has been placed through this date, and next to it the hand-written date "2-5-93" has been inserted with the initials "SW."

The department's supplemental record appendix includes an affidavit from Stephanie Weimar stating that she is a parole officer employed by the Massachusetts Parole Board and that "[i]n order to carry out the clearly expressed intention of the sentencing court that the [intervening] sentence . . . be served 'from and after' all previously imposed sentences, shortly after Goetzendanner's arrival at MCI-Cedar Junction on February 5, 1993, I made a return on the parole violation warrant and entered the effective date of return on the warrant as '2-5-93' and initialed that date."

[8]Title 120 Code Mass. Regs. § 303.16(2)(a) (1997) actually states, "Any officer authorized to serve civil or criminal process may serve a parole warrant."

[9]The department argues that Goetzendanner's claim "concerns execution of a parole violation warrant" and is thus directed at the parole board or its employee, a nonparty to this action. The "execution of a parole violation warrant" appears to be a reference to the affidavit of parole officer Stephanie Weimar, described at note 7, *supra.* The department (correctly in our view) does not advance the claim that the purported service of the parole violation warrant by Weimar constituted an effective, retroactive service of the warrant as of February 5, 1993.

discussion by disposing of Goetzendanner's claim that he is entitled to immediate release based on his claim that he is presently serving an illegal sentence.

"An 'illegal sentence' is one that is in excess of the punishment prescribed by the relevant statutory provision or in some way contrary to the applicable statute," *Commonwealth* v. *Layne*, 21 Mass. App. Ct. 17, 19 (1985), or one that is "premised on a major misunderstanding by the sentencing judge as to the legal bounds of his authority," *Commonwealth* v. *McGuinness*, 421 Mass. 472, 475 (1995). The sentences imposed in 1993 and 1983 were within the scope of permissible sentences under statutes applicable to Goetzendanner's convictions and are not illegal.

Nor were the sentences illegally imposed. An illegally imposed sentence is one in which the sentencing judge employs an erroneous or incorrect procedure when imposing the sentence. See *Commonwealth* v. *Layne*, 21 Mass. App. Ct. at 20; Reporters' Notes to Mass.R.Crim.P. 30, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1610 (LexisNexis 2007). Contrast *Commonwealth* v. *White*, 436 Mass. 340, 345 (2002), quoting from *Commonwealth* v. *McGuinness*, 421 Mass. at 475 (illegal sentence resulted from resentencing judge's "major misunderstanding" that she lacked authority to consider good conduct information); *Robinson* v. *United States*, 313 F.2d 817, 820-821 (7th Cir. 1963) (judge imposed maximum sentence under erroneous belief that petitioner would be eligible for parole, where statute precluded parole release); *United States* v. *Lewis*, 392 F.2d 440, 444 (4th Cir. 1968) (sentencing judge erroneously believed he was obligated to impose maximum sentence). The judge's actions here did not result from any major misunderstanding as to his authority, nor did they exceed the legal bounds of his authority.[10]

As we shall discuss, the sentences — while not illegal or il-

---

[10]Because his sentences were neither illegal nor illegally imposed, postconviction relief pursuant to Mass.R.Crim.P. 30(a), as appearing in 435 Mass. 1501 (2001), and Mass.R.Crim.P. 29(a), 378 Mass. 899 (1979), is not available to Goetzendanner. See *Commonwealth* v. *Layne, supra* at 19-20.

We note that in Goetzendanner's first motion for new trial pursuant to rule 30(b), he also alleged, inter alia, that he was unlawfully sentenced for his 1993 convictions. In a memorandum of decision, the motion judge (who was

legally imposed by the courts — were improperly executed by the department. That conclusion does not, however, entitle Goetzendanner to immediate release, because he has not completed service of his intervening sentences of from twenty to thirty years.[11] That he has passed the parole eligibility date in connection with these sentences, see note 4, *supra*, is not before us. A habeas corpus petitioner must establish that (1) there has been a violation of the State or Federal Constitution or laws; (2) the violation has deprived him of his personal liberty; and (3) he is entitled to immediate release from the custody of the respondent. See *Crowley, petitioner*, 54 Mass. App. Ct. 447, 451-452 (2002). See also *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole*, 376 Mass. 659, 665 (1978); *Sheriff of Suffolk County* v. *Pires*, 438 Mass. 96, 100 (2002). Denial of the writ was proper.

However, because there is a controversy between Goetzendanner and prison authorities regarding the proper execution of his unexpired and intervening sentences, "the court may properly treat his petition as a claim for declaratory relief." *Hamm* v. *Commissioner of Correction*, 29 Mass. App. Ct. 1011, 1011 n.3 (1991).[12] See *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole, supra* at 666 (denial of writ of habeas corpus may be

---

not the judge deciding the petition for writ of habeas corpus) concluded that the sentences were legal and lawfully imposed. He went on to state: "The defendant . . . will not commence serving his parole violation sentence until the expiration of the concurrent sentences he is presently serving."

[11]We reject Goetzendanner's claim that he is entitled to immediate release because his due process rights were violated by the following: (1) the prosecutor's alleged silence as to his parole status that, according to Goetzendanner, was "equivalent to providing misinformation that formed the foundation of the judge's sentence"; and (2) defense counsel's alleged failure to alert the trial judge that Goetzendanner was not serving the parole sentence. Neither the record nor the cases cited by Goetzendanner, *Townsend* v. *Burke*, 334 U.S. 736, 740-741 (1948), and *Commonwealth* v. *LeBlanc*, 370 Mass. 217, 221 (1976), support his claim.

Goetzendanner also contends that he must be immediately released because the judge "usurped" the executive authority of the parole board by imposing a "from and after" sentence, violating art. 30 of the Massachusetts Declaration of Rights. The parole board is not a party to this action. In any case, although the intervening sentence was incorrectly executed, imposition of that sentence was a proper judicial function. Cf. *Brach* v. *Chief Justice of the Dist. Ct. Dept.*, 386 Mass. 528, 538 (1982).

[12]In *Hamm* v. *Commissioner of Correction, supra*, the petitioner appealed

appealed as if it were denial of declaratory relief). Cf. *Hennessy* v. *Superintendent, Mass. Correctional Inst., Framingham,* 386 Mass. 848, 851-852 (1982).

2. *Declaration as to proper execution of sentences.* Whether Goetzendanner's two sets of sentences were improperly executed depends on the application of G. L. c. 127, § 149, regarding when service of the parole violation warrant is effective. Section 149, as appearing in St. 1986, c. 327, provides, in relevant part:

> "Service of the parole violation warrant shall be made effective forthwith upon arrest and imprisonment of the parole violator unless he is convicted of commission of a crime or found guilty of violating the conditions of federal or another state's parole or probation, then service of said parole violation warrant shall not be effective until the expiration of any additional sentences by parole or otherwise. . . ."

Because Goetzendanner was convicted of crimes while on parole, service of the parole violation warrant issued by the parole board on March 31, 1992, was *not* "made effective forthwith upon arrest and imprisonment of the parole violator"; rather, in these circumstances, "service of said parole violation warrant shall not be effective until the expiration of any additional sentences by parole or otherwise." *Ibid.* We have said, with respect to this legislation, that "the Legislature intended that service of the unexpired sentence of one on parole when sentenced for another crime was not to begin to run until the expiration of the term of the second sentence." *Costa* v. *Commission of Correction,* 56 Mass. App. Ct. 42, 45 (2002), quoting from *Harding* v. *State Bd. of Parole,* 307 Mass 217, 220 (1940).

from the Superior Court's dismissal of his petition for writ of habeas corpus. This court noted that a controversy existed between the petitioner and prison authorities regarding application of its policy to aggregate the petitioner's minimum sentences and add them to the first fifteen years of his life sentences in order to calculate the petitioner's parole eligibility. *Id.* at 1012. We observed in that case that the petitioner — who sought release from his life sentences in order to serve his "from and after" sentences — could not seek complete release and thus habeas corpus relief did not lie. Given the existence of a controversy between the parties, however, we concluded that the Appeals Court could consider the petition as one for declaratory relief, and we proceeded to determine the issues. *Id.* at 1011 n.3.

Here, the parole violation warrant was lodged as a detainer because at the time of its issue Goetzendanner was being held in lieu of bail on the new charges.[13] In the circumstances of this case, service of the warrant could not be effected until Goetzendanner had completed his intervening sentences. Any purported service of the parole warrant as of the date Goetzendanner was sentenced on the new charges was ineffective.

The trial judge's order that the intervening sentences were "to be served from and after the exp[i]ration of all previous sentences which Goetzendanner has been ordered to serve" was not an order that required the intervening sentences to be served after Goetzendanner had completed his reformatory sentences. That order provides merely that the intervening sentences were to be served in addition to, and not concurrent with, his previously ordered reformatory sentences.[14] See *Henschel* v. *Commissioner of Correction,* 368 Mass. 130, 133 (1975), quoting from Massachusetts Department of Correction, Commissioner's Bulletin 60-3 (July 25, 1960) ("If a judge has the intention that the sentences he is imposing should be in addition to the aggregate of all previous sentences he should sentence 'from and

---

[13]Once the parole violation warrant issued on March 31, 1992, Goetzendanner ceased serving time on his paroled reformatory sentence and the time spent awaiting trial for the new charges was credited toward his 1993 intervening sentence. *Watts* v. *Commissioner of Correction,* 42 Mass. App. Ct. 951, 952-953 & n.2 (1997), citing G. L. c. 127, § 149.

As Goetzendanner points out, applicable regulations provide that he "cannot be compelled to do his time on the intervening sentence from and after his parole sentence unless the parole violation warrant has been served prior to imposition of the intervening sentence," citing 120 Code Mass. Regs. § 303.16(2)(b)(2). We do not address the circumstance in which service of such a warrant is made upon a petitioner while he is free on bail and prior to imposition of any intervening sentence.

[14]This is also apparent from the context in which the judge issued his oral orders during the February 5, 1993, sentencing hearing. Goetzendanner's counsel informed the judge prior to sentencing that he had information that Goetzendanner was "facing five years still remaining to be served on a parole violation." In connection with the imposition of the sentence on the first indictment for aggravated rape, the judge stated: "You will receive credit for any time spent in confinement awaiting disposition of this case." This reflects the judge's correct interpretation of the application of G. L. c. 127, § 149, to the facts of this case. Because Goetzendanner was, at the time of sentencing, being held on bail in connection with the intervening sentences, the time awaiting trial was to be credited to reduction of the intervening sentences. See note 13, *supra.* .

after the expiration of all previous sentences which the defendant has been ordered to serve' ''). Even had the judge so intended, we doubt that the trial judge had the authority to order imposition of the unexecuted portion of the reformatory sentences.[15]

The execution of Goetzendanner's sentences, that is, the order in which he serves the reformatory and intervening sentences, is controlled by G. L. c. 127, § 149. We reject the notion advanced by the department that the trial judge's sentencing order effected a constructive service of the parole violation warrant that required that Goetzendanner first complete the balance of his reformatory sentences before the department could invoke the intervening sentences.

We conclude as follows: the department improperly executed Goetzendanner's sentences when it required Goetzendanner first to serve the four years remaining on his reformatory sentences and, on February 1, 1997, discharged him of those sentences, prior to invoking his intervening sentences.

The judgment is vacated and the case remanded to Superior Court for entry of a modified judgment which construes the writ of habeas corpus as a claim for declaratory relief and declares that Goetzendanner began serving his 1993 intervening sentences on February 5, 1993, with 320 days of credit, and that the remaining time on his reformatory sentences will not commence until the expiration by parole or otherwise of his intervening sentences.

*So ordered.*

---

[15]This would have been tantamount to a finding of a violation of parole in the absence of such a finding by the parole board.